UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECEIVED
SONY PRO SE OFFICE
2022 MAY 10  PM 2: 31

Wendy Harte

_____

Write the full name of each plaintiff.

**22  CV  3820**

_____CV_____
(Include case number if one has been
assigned)

Do you want a jury trial?

☐ Yes   ☐ No

-against-

Pace University
Dr. Sarah Blackwood
Dr. Stephanie Hsu

_____

Write the full name of each defendant. The names listed
above must be identical to those contained in Section I.

# EMPLOYMENT DISCRIMINATION COMPLAINT

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with
the court should therefore *not* contain: an individual's full social security number or full birth
date; the full name of a person known to be a minor; or a complete financial account number. A
filing may include *only*: the last four digits of a social security number; the year of an individual's
birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule
of Civil Procedure 5.2.

## I.    PARTIES

### A.  Plaintiff Information

Provide the following for each plaintiff named in the complaint. Attach additional pages if needed.

Wendy _____ A. _____ Harte
First Name                    Middle Initial          Last Name

20 Cortlandt Avenue
Street Address

New Rochelle _____ N.Y. _____ 10801
County, City              State           Zip Code

917.579.3348 _____ hartewendy@hotmail.com
Telephone Number           Email Address (if available)

### B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1:  Pace University
Name

One Pace Plaza
Address where defendant may be served

New York _____ NY _____ 10038
County, City              State           Zip Code

Defendant 2:  Dr. Serah Blackwood
Name

One Pace Plaza
Address where defendant may be served

New York _____ NY _____ 10038
County, City              State           Zip Code

Defendant 3:

_Dr. Stephanie Hsu_
Name

_One Pace Plaza_
Address where defendant may be served

_New York_          _NY_          _10038_
County, City          State          Zip Code

## II.   PLACE OF EMPLOYMENT

The address at which I was employed or sought employment by the defendant(s) is:

_Pace University_
Name

_One Pace Plaza_
Address

_New York_          _NY_          _10038_
County, City          State          Zip Code

## III.   CAUSE OF ACTION

### A.   Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

☑ **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination on the basis of race, color, religion, sex, or national origin

    The defendant discriminated against me because of my (check only those that apply and explain):

    ☑ race: _____

    ☐ color: _____

    ☐ religion: _____

    ☐ sex: _____

    ☐ national origin: _____

☐ **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

    My race is: _____

☐ **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

    I was born in the year: _____

☐ **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

    My disability or perceived disability is: _____

☐ **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

    My disability or perceived disability is: _____

☐ **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

## B. Other Claims

In addition to my federal claims listed above, I assert claims under:

☑ **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

☑ **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

☐ Other (may include other relevant federal, state, city, or county law):

    Common Law, Section 1981 of the Civil Rights Act of 1866, The Civil Rights Act of 1991

## IV.   STATEMENT OF CLAIM

### A.   Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

- ☐ did not hire me
- ☑ terminated my employment
- ☐ did not promote me
- ☐ did not accommodate my disability
- ☑ provided me with terms and conditions of employment different from those of similar employees
- ☑ retaliated against me
- ☑ harassed me or created a hostile work environment
- ☐ other (specify): _____

_____

### B.   Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

_Please see the attached complaint. Thank you._

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

## V.    ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

☑ Yes (Please attach a copy of the charge to this complaint.)

When did you file your charge?    _____

☐ No

Have you received a Notice of Right to Sue from the EEOC?

☑ Yes (Please attach a copy of the Notice of Right to Sue.)

What is the date on the Notice?    _____

When did you receive the Notice?    _____

☐ No

## VI.    RELIEF

The relief I want the court to order is (check only those that apply):

☐ direct the defendant to hire me

☐ direct the defendant to re-employ me

☐ direct the defendant to promote me

☐ direct the defendant to reasonably accommodate my religion

☐ direct the defendant to reasonably accommodate my disability

☑ direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here)

_Please see attached complaint. Thank you._

_____

_____

_____

## VII.   PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that:
(1) the complaint is not being presented for an improper purpose (such as to harass,
cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are
supported by existing law or by a nonfrivolous argument to change existing law; (3) the
factual contentions have evidentiary support or, if specifically so identified, will likely
have evidentiary support after a reasonable opportunity for further investigation or
discovery; and (4) the complaint otherwise complies with the requirements of Federal
Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I
understand that my failure to keep a current address on file with the Clerk's Office may
result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to
proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| 5/10/22 | |
| Dated | Plaintiff's Signature |
| Wendy A. Haste | |
| First Name          Middle Initial | Last Name |
| 30 Cortlandt Avenue | |
| Street Address | |
| New Rochelle          NY          10801 | |
| County, City          State          Zip Code | |
| 917.579.3348 | haste.wendy@hotmail.com |
| Telephone Number | Email Address (if available) |

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☑ Yes   ☐ No

If you do consent to receive documents electronically, submit the completed form with your
complaint. If you do not consent, please do not attach the form.

# UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

---

**WENDY HARTE**

                      **Plaintiff,**

      -against-

**PACE UNIVERSITY,
DR. SARAH BLACKWOOD,
DR. STEPHANIE HSU**

                   **Defendants,**

                     **COMPLAINT**

                     **JURY TRIAL
REQUESTED**

                     **Civil Action No.**

---

Plaintiff Wendy Harte, J.D. ("Plaintiff"), as and for her Complaint in this action against Defendants Pace University of New York ("Pace"), Dr. Sarah Blackwood ("Blackwood"), Pace University Professor and Interim English Department Chairperson and Dr. Stephanie Hsu ("Hsu"), Pace University Professor and American Studies Program Director (collectively, "Defendants"), hereby alleges as follows:

## NATURE OF THE CLAIMS

1.    This is an action for declaratory and equitable relief, as well as monetary damages, to redress Defendants' unlawful employment practices against Plaintiff, including their

discriminatory treatment, hostile work environment and harassment of her due to her race and

their unlawful retaliatory conduct, harassment and intimidation against and of her after Plaintiff

complained of unlawful discrimination in the workplace in violation of Section 1981 of the Civil

Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964

("Title VII"), as amended, the Civil Rights Act of 1991, the New York State Human Rights Law,

the New York City Human Rights Law and her common law claim of defamation per se.

This Complaint was prepared with the assistance of counsel.


## JURISDICTION AND VENUE

2.      The Court has jurisdiction as this action involves federal questions regarding the

deprivation of Plaintiff's rights under Section 1981, Title VII, and the Civil Rights Act of 1991.

The Court has supplemental jurisdiction over her related claims arising under state and local law

pursuant to the New York State Human Rights Law, the New York City Human Rights Law, and

over her common law claim of defamation per se.


3.      Venue is proper in this district under 28 U.S.C. §1391 (b) and (c), because a substantial

part of the events or omissions giving rise to this action, including the unlawful employment

practices alleged herein, occurred in this district.

## ADMINISTRATIVE PROCEDURES

4.      Prior to the filing of this Complaint, Plaintiff filed a charge of discrimination with the

U.S. Equal Employment Opportunity Commission ("EEOC"), alleging violations of Title VII

and the Civil Rights Act of 1991. Plaintiff's EEOC charge arises out of the same facts alleged

herein that pertain to her Section 1981, Title VII Discrimination claims and Civil Rights Act of

1991 claims.

5.      On February 2, 2022, the EEOC issued a Notice of Right To Sue Letter to Plaintiff and

this action is filed within 90 days of receipt of that notice.

6.      Any and all prerequisites to the filing of this suit have been met.

## PARTIES

7.      Plaintiff, Wendy Harte, is a resident of Westchester County, New York. At all relevant

times, Plaintiff is and has been a resident of the State of New York and met the definition of an

"employee" of Pace University under all applicable law.

8.      Pace University is a private, non-profit four-year university engaged in offering

learning programs and experiences through its New York City, White Plains and

Pleasantville campuses. At all relevant times, Pace has met the definition of an "employer" under

all applicable law.

9.      Dr. Sarah Blackwood is white female Associate Professor and was Pace's interim

Chairperson of the English Department at Pace University in the Spring 2021 school semester.

At all relevant times, Blackwood participated in and/or condoned discriminatory and retaliatory

treatment and otherwise unlawful employment decisions and actions taken against Plaintiff, and

was a "covered employer" and/or an "aider" or "abettor" under all applicable law.


10.     Dr. Stephanie Hsu is an Asian female Associate Professor and was Pace's American

Studies program director in the Spring 2021 school semester. At all relevant times,

Hsu participated in and/or condoned discriminatory and retaliatory treatment and otherwise

unlawful employment decisions and actions taken against Plaintiff, and was an "aider" and/or

"abettor" under all applicable law.


## FACTUAL ALLEGATIONS

11.     Plaintiff is a black female Assistant Adjunct Professor of South American/Guyanese

descent. Plaintiff obtained her juris doctor degree from the University of Southern California

Gould School of Law (USC) in Los Angeles, California. Plaintiff has been teaching for 10 years

at Borough Manhattan Community College, York College and Pace University.


12.     Plaintiff was employed by Pace University at its New York City campus, from July 9,

2013 to May 1, 2021, as a professor in the English department.


13.     As a professor in Pace's English department, Plaintiff reported to Blackwood.

14.     During the course of her employment with the University in the English department, Plaintiff's position had responsibility for providing instruction to students on the subjects of English Composition, Literature, Writing in the Disciplines and Introduction to Critical Race and Ethnicity Studies. Plaintiff regularly received favorable ratings for her teaching from students on official written evaluations. She also received favorable feedback from the past chairperson who stated that Plaintiff's evaluations were "stellar", that Plaintiff receiving a 5 out of 5 student evaluation rating one year was "rare" and that Plaintiff "was doing the work of the University". Plaintiff worked hard and her evaluations reflected that care. Plaintiff regularly taught the maximum or close to the maximum amount of courses allowed for adjunct faculty.

**RACE-BASED, ANTI-BLACK RACISM AT PACE UNIVERSITY**

15.     In the Spring semester of 2021, beginning in February 2021, Plaintiff taught an Introduction to Critical Race and Ethnic Studies ("CRES") class via Pace's remote teaching platform, Zoom.

16.     Almost from the outset of teaching this CRES course, Plaintiff was subjected to a pattern of inappropriate and hostile conduct by some students, including, but not limited to, students yelling at Plaintiff, and student's disrupting her class and making false allegations against her to Pace administration. Plaintiff's physical reactions to the bullying began with heart palpitations/racing heart and perspiring. Her physical reactions became more severe as the bullying continued and then included discrimination, harassment and retaliation by Pace, Blackwood and Hsu.

17.     On February 10, 2021 in the CRES class, Plaintiff was discussing an essay about

Indigenous people. A white male student, asked Plaintiff, "Can good people do bad things?"

When Plaintiff asked him what he meant, the student stated that telling the truth (about any

people of color) did not work against white people and that violence was the solution.

While Plaintiff responded that violence was not the right thing to do and that it would end with

them in prison, Plaintiff noticed that a conversation about violence had started in the Zoom

chat. Students were using the chat to say that violence against white people was a great way "to

start a conversation" with them. Plaintiff then asked the white male student and the

other students not to use the chat to discuss violence as Plaintiff could not moderate that

discussion during class.

17a.     At that point, the discussion became hostile with the white male student yelling at and

waving books at the camera. Because Plaintiff asked him to provide sources for his arguments

via the Zoom chat to back up his claim that the truth was used in the past and did not work, this

male student likened Plaintiff to a "Holocaust-denier", while yelling at her that she should not

ask him to back up anything he was saying in class because Holocaust deniers asked for proof in

order to disprove the Holocaust. Another student, a non-Black female student of color, jumped in

to say, belligerently, that if the white male student was not allowed to use the Zoom chat

function to talk about violence, he was not going to use it to provide Plaintiff with any

information that she, as the professor, had asked for.

17b.     This February 10, 2021 incident of yelling, arguing, belligerence, and apparent race-

based anti-Black racist bullying continued and lasted about *30 minutes after* the 1 hour and 50

minute class had ended, with the non-Black female student of color referenced above stating to Plaintiff disdainfully that "You can't even end your class on time or get the work done. Look we're still here 30 minutes later". That student insisted continually that she was speaking for the entire class when she expressed her negative views towards Plaintiff and issues with Plaintiff.

17c.   Plaintiff asked the students several times to calm down and to stop yelling as Plaintiff added, "I'm not yelling at you."

17d.   Another student, a Black male student, who was witnessing the behavior and was trying to talk but could not because the belligerent students were dominating the class with their abusive behavior, called the behavior he was witnessing "ignorant".

18.   Plaintiff was upset, shaken and in distress. Plaintiff experienced symptoms of an anxiety attack during and after the February 10, 2021 incident.

19.   On February 11, 2021, Plaintiff made a formal complaint to Hsu after that bullying incident, by phone. Plaintiff asked Hsu to speak with the students involved. Plaintiff told Hsu that Plaintiff believed the bullying towards her was personal. Plaintiff told Hsu that Plaintiff did not feel safe around the students. Plaintiff was also worried about the emotional health of the other students who had to witness her being bullied by a group of their peers.

19a.   Hsu initially refused Plaintiff's request. As a result of Plaintiff's repeated requests, however, Hsu finally agreed to respond, review and approve a draft email, that Plaintiff would

write and then send to the students involved, after approval, inviting the students to meet

with Hsu. Hsu never responded to the draft email Plaintiff sent to her.

20.     On February 15, 2021, Harte was contacted by a student from the CRES class. That

student requested a private meeting to share things that the student stated that Plaintiff did not yet

know about the hostile behavior by the students towards her in class. This student told Harte that

the bullying towards her was race-based, anti-black racism. The student told her that a group of

CRES students were having regular, scheduled meetings about Plaintiff in which they talked

about her as a "black conservative", a woman who was "ashamed of her blackness which is why

she taught at a predominantly white institution", that Plaintiff was unqualified to teach the

class, and that the apparent leader of the group "was disappointed in her Guyanese heritage",

among other things. The student said they were so upset that they did not know what to do so

they came to Plaintiff. They said they would have wanted to be told, if this were happening to

them. Plaintiff did not share that conversation with Hsu until February 18, 2021.

21.     At some time on or before February 17, 2021, Hsu knew, had been informed and/or had

determined that the student bullying towards Plaintiff was race based, anti-black racism. In an

email dated February 17, 2021 to Plaintiff, Hsu stated, "I've definitely broached the subject of

anti-Black racism with the students I've talked to, and I believe that they're aware of the

potential impact on you, and there's a lot of distress about it…"

22.     On February 16, 2021, Hsu contacted Plaintiff via email after having spoken with some

students and told Plaintiff that she had to change the structure of her class as an "experiment".

Plaintiff was told to stop lecturing, teaching and speaking to the students, except for introducing a topic of discussion. Thereafter, the students were to speak amongst each other without Plaintiff speaking.

22a. Hsu had already told the students about this change before informing Plaintiff on February 16, 2021.

22b.    Hsu also told Plaintiff what words and topics that Plaintiff specifically needed to avoid altogether, although these topics were a part of the syllabus Hsu created for the course and had used many times to teach the course.

22c.    Plaintiff was very upset about this February 16, 2021 email. Plaintiff responded to Hsu's email and expressed her concern, disappointment and shock at what it stated and now required of her.

22d.    The February 16, 2021 email from Hsu came in the aftermath of class bullying of Plaintiff where students had been trying to silence Plaintiff and keep Plaintiff from saying anything in class.

23.    On February 17, 2021, Hsu asked Plaintiff, via email, if she could observe Plaintiff's class that day. Plaintiff agreed. This class was the "experimental" class where Plaintiff was told not to speak and to let the students speak amongst themselves instead of her teaching the class.

24.     During that class on February 17, 2021, Hsu, without Plaintiff's consent, texted Plaintiff on Plaintiff's personal cell phone to tell her in so many words to stop talking to the students. Plaintiff was upset about this degrading violation of her academic freedom and misuse of her personal information. Plaintiff did not respond to Hsu's text.

25.     After that class, on February 17, 2021, Hsu met with Plaintiff on Zoom. It was a contentious meeting. Hsu told Plaintiff twice to drop the bullying complaint. Hsu told her, among other things, that Plaintiff was the problem.

26.     Plaintiff disagreed with Hsu that Plaintiff or her teaching was the issue in general or that specific day, as Plaintiff had barely said anything to the students per Hsu's instructions. Plaintiff refused to drop the complaint and insisted on meeting with the interim chairperson Blackwood. When Plaintiff refused the second time to drop the complaint, Hsu threatened that if Plaintiff did not drop it, there would be consequences. Plaintiff again refused and insisted on meeting with the chairperson. Hsu reluctantly agreed.

**FEBRUARY 18, 2021 MEETING WITH HSU AND BLACKWOOD**

27.     On February 18, 2021 Plaintiff met with English department chairperson Blackwood and Hsu. Hsu arranged this meeting.

27a.     At the meeting, Hsu confirmed that conversations about violence towards white people had taken place in the classroom and stated that the white male student involved had admitted to it.

27b.    Plaintiff shared with Blackwood and Hsu, for the first time, that there was bullying towards her and that it was race-based, anti-black racism.

27c.    Blackwood largely ignored Harte's complaint of race discrimination and repeated what Hsu told Plaintiff about not teaching. Disturbingly, Blackwood told Plaintiff to stop teaching and let the students speak amongst themselves for the rest of the semester. The semester had just begun. Plaintiff expressed discomfort with not teaching as Pace is a teaching institution and evaluations from students are based on teaching, not on functioning as a silent observer. However, Plaintiff was given no choice about interacting with the students or teaching. Plaintiff was directed to be silent.

28.    Plaintiff then offered that she could agree to recording her lectures on one day for her safety with no interaction with students. Plaintiff stated that she would then allow students to have no contact with her and speak amongst themselves about the work on the next day. Blackwood agreed to this.

29.    The next day, on February 19, 2021, Hsu sent an email to Tiffany Hamilton ("Hamilton"), letting her know about "the dynamic" in Plaintiff's class, as Hsu labeled what had been occurring between the students and Plaintiff. Hamilton is the Black female Pace Diversity Coordinator and Associate VP for Diversity and Inclusion.

29a.    At no time before this meeting with Blackwood did Hsu contact or put Harte in touch

with Hamilton or anyone else, even though Hsu knew that the bullying was race-based, anti-

black racism before this meeting. Hsu would not even call the students' behavior race-based,

anti-black racism in her email to Hamilton even though Hsu knew this circumstance to be true.


**FEBRUARY 25, 2021 HAMILTON MEETING**

30.    On February 25, 2021, Plaintiff met with Hamilton. Hamilton ultimately suggested that

Plaintiff create a "Community Agreement" with the students. The "Agreement" did not address

race-based, anti-black racism. Plaintiff declined participating. The suggestion for Hamilton or

others to have that meeting to establish a Community Agreement or a guide regarding student

conduct never took place.


31.    On March 3, 2021, after another disturbing student bullying incident occurred in

Plaintiff's class, Hamilton told Plaintiff to speak to Dean Todd Smith-Bergollo ("Smith-

Bergollo"), the white male Senior Associate Dean for Students at Pace.


31a.    At some point before Plaintiff met with Hamilton but before she referred Plaintiff to

Smith-Bergollo, Hamilton told Plaintiff that she had spoken with Hsu. Hamilton had spoken with

Hsu at least twice before referring Plaintiff to Smith-Bergollo. When Hamilton referred Plaintiff

to Smith-Bergollo, she informed Plaintiff that she had already spoken to him about Plaintiff.


31b.    On March 3, 2021, Plaintiff contacted Smith-Bergollo via email and related detailed

information on the race-based anti-black hostile work environment that she had described to Hsu

and Blackwood in the February 18, 2021 meeting with them. Plaintiff asked Smith-Bergollo to help her.

32.     Later, on March 3, 2021, Plaintiff informed Blackwood that she had contacted Smith-Bergollo regarding the bullying and the latest incident.

**ONGOING OBSERVATIONS OF PLAINTIFF BY BLACKWOOD AND HSU**

33.     On March 7, 2021, Blackwood suddenly emailed Plaintiff to tell Plaintiff that Blackwood would be observing her class. Blackwood stated her objective as wanting to be fair to Plaintiff and the students. In an observation class session, there is no talking by the observer to the class or professor.

34.     Blackwood and Hsu continued to "observe" Plaintiff every class thereafter, provided there were no conflicts, over Plaintiff's objections.

35.     From the very beginning when Blackwood and Hsu were present in Plaintiff's class sessions, either or both intervened, spoke to students during Plaintiff's class time to answer questions that were addressed to Plaintiff, handle issues that were Plaintiff's responsibility, and/or communicated to Plaintiff using the Zoom chat function to stop Plaintiff from saying things while she was speaking to the class or answering questions at the start of class.

35a.    Several bullying incidents against Plaintiff by students occurred in front of Blackwood.

36.    On one particular class day, Blackwood messaged Plaintiff to tell her to not speak to the class, correct or warn them against their use of anti-white and anti-Latino stereotypes, bias and microaggressions that Plaintiff observed occurring during that day's "student-centered" class discussions.

36a.    "Student-Centered" discussions or a "Flipped" classroom is what Blackwood and Hsu called the new format of the students teaching themselves by speaking amongst themselves while Plaintiff watched in silence. Blackwood said this approach with this definition came directly from the Provost's office.

37.    Plaintiff continued to object to the observations, in writing, to Blackwood and Hsu as their presence appeared to send the message to the students that Plaintiff was *in trouble* and was being monitored. The presence of Blackwood and Hsu, and their actions in the remote classroom, emboldened the students to act out more in the ways still available to them.

37a.    This behavior by the students included making false, degrading and/or insulting accusations at the beginning of the class in front of Blackwood when Plaintiff answered any questions before the "student-centered" class discussion and facilitations (class projects where each student presented on an assigned essay) began for the day. For example, the bullying students falsely claimed the Plaintiff was not responding to student emails.

37b.    In witnessing the race-based anti-black bullying hostile work environment herself, Blackwood said nothing.

**MEETING WITH SMITH-BERGOLLO, BERNADETTE BAUMANN ("Baumann"), EXECUTIVE DIRECTOR, EMPLOYEE AND LABOR RELATIONS, AND VARISE COOPER ("Cooper"), VICE PRESIDENT OF THE UNION OF ADJUNCT FACULTY AT PACE**

38.     On March 11, 2021, Plaintiff met with Smith-Bergollo for the first time after initially contacting him. Baumann and Cooper were also present. In that meeting, Plaintiff shared the threat by Hsu and all of Hsu's attempts to shut down her academic freedom, cover up the race-based, anti-black racist bullying against Plaintiff and retaliate against her for reporting discriminatory treatment during her classes. Plaintiff also shared Hsu's texting her without her permission on her cell phone while Plaintiff was teaching to tell her to be quiet and Hsu answering a question a student asked Plaintiff while Hsu was supposed to be observing only.

38a.    In the March 11, 2021 meeting, Plaintiff also shared Hsu and Blackwood's new requirement that Plaintiff stop teaching the class, remain silent and let the students talk amongst themselves. Plaintiff also shared the behavior in the classroom by the students and the things being said by the students that Plaintiff was required to be silent about. A professor's silence when students express racist beliefs is condonation. It is also an express violation of Pace's policy.

38b.    Plaintiff shared with Smith-Bergollo that she could get no help to that point.

38c.    When Plaintiff met Smith-Bergollo, he had already spoken with Hamilton who had already spoken with Dr. Hsu, who had already spoken with Plaintiff and the students. Everyone collectively and individually knew that there was ongoing race-based, anti-black racism. Smith-Bergollo may have been informed of this from his discussion with Hamilton prior to meeting Plaintiff and prior to Plaintiff sharing that information in her original two emails to him about her CRES class.

38d.    Prior to the meeting and via email, Smith-Bergollo told Plaintiff that he would help her with a particular student that was resistant to calming down the racist bullying behavior. He stated he would talk to the student. Ultimately, a meeting between Smith-Bergollo and the student did not take place.

39.    Plaintiff did not have contact with Smith-Bergollo again after the March 11, 2021 meeting.

40.    On March 12, 2021, less than 24 hours after that meeting with Smith-Bergollo, Plaintiff was sent an email by Blackwood, summoning Plaintiff to a meeting with Hsu, Baumann and Cooper, where "disciplinary action" could be taken.

40a.    Blackwood and Hsu were the two people about whom Plaintiff had just reported negative, damaging and potentially very serious information, less than 24 hours prior.

41.     After the March 11, 2021 meeting, Blackwood went on to remove Plaintiff from her class on March 26, 2021, using knowingly false information. Hsu went on to immediately take Plaintiff's place in that class after Plaintiff was removed. Blackwood then went on to write a negative evaluation of Plaintiff in June that Blackwood knew or should have known to be false, as part of her concerted effort to systematically discriminate and retaliate against Plaintiff and harass Plaintiff.

42.     On March 12, 2021, Plaintiff discovered that Hsu had added herself to Plaintiff's online class platform, "classes", where Hsu could scrutinize Plaintiff's communications to students, without Plaintiff's knowledge or consent.

**MARCH 18, 2021 MEETING WITH BLACKWOOD, BAUMANN AND HSU**

43.     On March 18, 2021, Plaintiff met with Blackwood, Baumann and Hsu with Cooper present as Plaintiff's union representative. Plaintiff was attacked and reprimanded for almost all of her actions in the classroom including, but not limited to, speaking to the class about bullying Plaintiff and anti-white as well as anti-Latinx racism/bias.

43a. In the meeting, Hsu stated in that, in her speaking with the students, that she "specifically mentioned anti-black racism and all of us being very vigilant about it. So, I do believe that I asked the students to think about their comportment in that framework. So, I also believe that I didn't pull punches with them, in other words, about what was going on."

43b.    Plaintiff was also attacked for things that the students, who Baumann, Blackwood and Hsu knew to be motivated by racial animus, had falsely accused her of. At one point, Cooper stated that it sounded like Blackwood and Hsu were making up rules on the spot that they were accusing Plaintiff of breaking. At another point, Hsu stated specifically that one of the rules in contention, that Plaintiff was accused of breaking, was "unwritten".

43c.    In that March 18, 2021 meeting, Hsu expressed her disapproval of Plaintiff attempting to correct a student who had stated that illegal immigrants are named "Jose" (which implies that all illegal immigrants are of latin descent). Allowing the use of this stereotype directly contradicted Pace's official handbook policy, which states that professors must speak out against any bias, racism or stereotyping that they are witness to, are aware of or become aware of.

43d.    Instead of focusing on the stereotype and the harm that it could cause, in admonishing Plaintiff, Hsu said that this type of language should have been acceptable in the classroom, and, as she stated, "I prefer the term "undocumented worker"".

43e.    Blackwood, as part of her attacks, asked Plaintiff, in a shocking request, to provide email evidence that there were students in the class who supported Plaintiff. The students who Blackwood knew to be motivated by racial animus had already made their opinions known to her. Blackwood unquestioningly trusted those opinions.

43f.     Rather than taking actions to admonish or discipline the offending students, Pace

University protected their racially abusive and disruptive campaign to have Harte removed as

professor.

**REMOVAL OF PLAINTIFF AND NEGATIVE EVALUATION**

44.     On March 26, 2021, Plaintiff received a removal letter from Blackwood's secretary,

removing Plaintiff, as the professor, from her class mid-semester. Blackwood listed *ten* reasons

for why Plaintiff was being removed. These reasons were either false statements and/or were

normal professor actions framed as wrongdoing.

44a.     The removal letter contained various contradictory or vague statements that were,

specifically and at the least, either 1) false 2) out of context or 3) applied different rules to

Plaintiff than to other professors. Oftentimes, Blackwood's statements were a combination of

some or all of the three. For example, Blackwood stated an issue in the removal letter as follows:

-"Failure to utilize effective classroom management skills."

44b.     It is not clear what Blackwood meant here as this statement was vague. Blackwood

provided no specific examples, and it is out of context, as she did not seem to take into account

the bullying, race-based, anti-black racism, about which Plaintiff had been trying to get help, of which Blackwood was aware and had largely ignored and/or appeared to encourage.

44c.    During the semester. Blackwood several times admonished Plaintiff for using the "mute" and "chat" functions available to all professors. During an observation of Plaintiff's class, Blackwood actively attempted to stop Plaintiff, while she employed measures that were properly considered classroom management, by using the chat function on Zoom to demand that Plaintiff unmute the students. Plaintiff, at the time, had been trying to secure the students' commitment to stop disrupting her class.

44d.    Blackwood appeared to create, set up or encourage the circumstances (by coming to Plaintiff's class and trying to stop her from managing the class) that she could then use later in a letter to remove Plaintiff from that class. The removal itself was pretext to cover the discrimination, retaliation and harassment Blackwood and Hsu were committing against Plaintiff.

-"Not utilizing Provost recommendations with regards to "early assessment" practices, specifically, ensuring that all students are assessed by the third week of the semester."

44e.    Pace's website states, as the statement Blackwood listed above and in the removal letter stated, that the Provost's recommendation is a recommendation and *is not required*. Based on statements issued by the Provost, not all or even many professors participated in "early assessment", although Pace encouraged that participation.

44f.    Blackwood removed Plaintiff for not participating in an optional program that other professors did not participate in and were not punished for.

44g.    The removal letter by Blackwood became a part of Plaintiff's official personnel file. It will follow her to any other teaching job she applies for. It is false and defamatory.

45.    On March 29, 2021, Hsu took over teaching Plaintiff's class. Hsu taught extensively in all five classes, although Hsu had told Plaintiff not to speak to the students or lecture when Plaintiff was teaching. Hsu was not silent in the classes that she took over as she and Blackwood required Plaintiff to be.

45a.    However, on March 29, 2021, when Hsu took over teaching Plaintiff's class, *Hsu changed the teaching mode of the CRES course, which had been advertised in Pace's course catalog as an in person/synchronous course for two days per week.* Hsu decreased the synchronous mode to one day a week, which she arrived at, apparently, by taking a *student survey*. Where Plaintiff taught two synchronous/in person class days per week, Hsu taught one day a week.

45b.    Plaintiff was never told that she could change the course mode and reduce her synchronous teaching time by half.

45c.    By changing the advertised course structure, Hsu also appeared to reward students who had engaged in race-based anti-black racism against Plaintiff, if students preferred to not have to appear for class one less day per week.

45d.    In Hsu's first class after taking over Plaintiff's class, she thanked them for "*persevering*" through Plaintiff's class.

46.    There is a reporting system at Pace for students who discriminate, stereotype or exhibit bias, among other things, based on race, gender, sexuality, etc. Neither Blackwood or Hsu ever shared a link to that system or shared that the system existed with Plaintiff. Instead, Harte was passed from person to person in Pace's administration as she repeatedly requested help. Harte was punished for it where other professors were not. Harte was unfairly removed for actions in the classroom that other professors were not punished or removed for.

47.    On June 11, 2021, Plaintiff received an evaluation consisting of false statements by Blackwood, with a 1 out of 5 rating from Blackwood. This evaluation came at a time and in a semester when Plaintiff had made her first complaint ever about bullying and race-based anti-black racism at Pace.

47a.    On June 30, 2021, Plaintiff asked Blackwood if she could explain her evaluation of Plaintiff. Professors are allowed the opportunity to discuss a negative evaluation with the department chairperson. Blackwood replied, "I am unclear based on your evaluation, and

subsequent email, what specific information you are looking for, that you do not have access to or have not received previously?".

47b.    The evaluation prepared by Blackwood stated falsely that, among other things, Plaintiff was "Late to classes", "Rarely prepared", and "No use of classes/Blackboard". When Plaintiff asked Blackwood for further detail about when Plaintiff was late, unprepared (and what that meant/what standard she was judging Plaintiff by) or ended class early, Blackwood provided Plaintiff with provably false days and events.

48.    After the discrimination, hostile work environment and retaliation that occurred during the Spring 2021 semester, which included the observations, removal and meetings, Plaintiff was also constructively discharged. Plaintiff's teaching course load for the past eight semesters was as follows:

Fall 2017 – 8 credits

Spring 2018 – 7 credits

Fall 2018 – 6 credits

Spring 2019 – 4 credits

Fall 2019 – 9 credits

Spring 2020 – 8 credits

Fall 2020 – 9 credits

Spring 2021 – 10 credits

48a.    After the Spring 2021 semester, Plaintiff was offered one class with a course load of *3 or 4 credits*. This class was offered late, on August 12, 2021, although Plaintiff's assignment offers for the following semester were normally sent before the current semester ended. In this case, it would have been sent in May 2021 or before.

49.    As a result of the actions and the inaction by Blackwood, Hsu and Pace, including, but not limited to the discrimination, hostile work environment and retaliation they made Plaintiff suffer through, Wendy Harte's options have been so severely limited in the teaching profession as to constitute an industry ban.

50.    The toll on Harte's health has been serious. Harte, herself, did not feel safe and had not felt safe since almost the beginning of the race based, anti-black racism bullying incidents. Blackwood's and Hsu's actions, under the color of authority, only heightened her feelings of uncertainty and danger. Harte has struggled emotionally and physically, and those effects have been long term, thus far.

51.    At the time of the bullying and repeatedly, Plaintiff expressed concern for the emotional and mental health of the bystanders, the students who had to witness the bullying.

51a.    Plaintiff was disturbed about the message that the bullying students were sending to each other and other students and the message Blackwood and Hsu were sending to the students, that this dangerous, racist, damaging and deplorable behavior was condoned and condonable.

51b.   Plaintiff remains shocked, hurt and angry by what has happened to her. Plaintiff's

teaching (which Plaintiff loved doing), teaching opportunities and abilities, have been severely

limited and affected negatively, because of the actions of the students, Blackwood and Hsu.

Plaintiff's trust in engaging with students and a university administration again has been all but

destroyed because of discrimination, retaliation and harassment.

51c.   Plaintiff has suffered tremendously and continues to suffer financial and economic harm

as well as severe mental anguish and emotional distress, including but not limited to, depression,

humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and

emotional pain, suffering and lost pay.

## FIRST CAUSE OF ACTION

### (Discrimination in Violation of Section 1981)

52.   Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs

as if fully set forth therein.

52a.   Defendants have discriminated against Plaintiff in violation of Section 1981 by

subjecting her to disparate treatment and harassing her because of her race, by, inter

alia, removing her from her course mid-semester, removing her official professor title on Pace's

public online system while she was actively teaching, and filing a false and negative end of year

evaluation, effectively terminating any future employment opportunities with the University.

52b.    As a direct and proximate result of the Defendants' unlawful discriminatory conduct in violation of Section 1981, Plaintiff has suffered and continues to suffer financial and economic damages as well as mental anguish and emotional distress, including but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

52c.    Defendants' unlawful discriminatory conduct and harassment constitute a willful and wanton violation of Section 1981, was outrageous and malicious, was intentional, and was done with reckless indifference to Plaintiff's civil rights, entitling her to an award of punitive damages.

## SECOND CAUSE OF ACTION

### (Retaliation in Violation of Section 1981)

53.    Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth therein.

53a.    Defendants have violated Section 1981 by subjecting Plaintiff to retaliation for her protected complaints, opposition to students discriminatory bullying on the basis of race and ethnicity, and opposition to Hsu's and Blackwood's retaliatory action towards Plaintiff by, inter alia, removing her from her course mid-semester, removing her official professor title on Pace's public online system while she was actively teaching, and filing a false and negative end of year evaluation, effectively severely limiting and/or terminating future employment opportunities as a professor.

53b.    As a direct and proximate result of the Defendants' unlawful retaliatory conduct in

violation of Section 1981, Plaintiff has suffered and continues to suffer financial and economic

damages as well as mental anguish and emotional distress, including but not limited to,

depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-

confidence, and emotional pain and suffering.


53c.    Defendants' unlawful retaliatory conduct constitutes a willful and wanton violation of

Section 1981, was outrageous and malicious, was intentional, and was done with reckless

indifference to her civil rights, entitling her to an award of punitive damages.


## THIRD CAUSE OF ACTION

### (Discrimination in Violation of Title VII)

54.    Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs

as if fully set forth therein.


54a.    Defendants have discriminated against Plaintiff in violation of Title VII by

subjecting her to disparate treatment and harassing her because of her race, by, inter

alia, removing Plaintiff from her course mid-semester, removing her official professor title on

Pace's public online system while she was actively teaching, and filing a false and negative end

of year evaluation, effectively severely limiting, if not terminating, any

future employment opportunities with the University.

54b.    As a direct and proximate result of the Defendants' unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer financial and economic damages as well as mental anguish and emotional distress, including but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

54c.    Defendants' unlawful discriminatory conduct constitutes a willful and wanton violation of Title VII, was outrageous and malicious, was intentional, and was done with reckless indifference to her civil rights, entitling her to an award of punitive damages.

## FOURTH CAUSE OF ACTION

### (Retaliation in Violation of Title VII)

55.    Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth therein.

55a.    Defendants have violated Title VII by subjecting Plaintiff to retaliation for her protected complaints, opposition to student discriminatory bullying on the basis of race and ethnicity, and opposition to Hsu's and Blackwood's retaliatory action towards Plaintiff by, inter alia, removing her from her course mid-semester, removing her official professor title on Pace's public online system while she was actively teaching, and filing a false negative end of year evaluation, effectively severely limiting, if not terminating, future employment opportunities with the University.

55b.    As a direct and proximate result of the Defendants' unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer financial and economic damages as well as severe mental anguish and emotional distress, including but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

55c.    Defendants' unlawful retaliatory conduct constitutes a willful and wanton violation of Title VII, was outrageous and malicious, was intentional, and was done with reckless indifference to her civil rights, entitling Plaintiff to an award of punitive damages.

## FIFTH CAUSE OF ACTION

### (Discrimination, Harassment and Retaliation in Violation of New York State Human Rights Law)

56.    Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth therein.

56a.    Defendants have discriminated against Plaintiff, retaliated against her and harassed her in violation of New York State Human Rights Law by subjecting Plaintiff to disparate treatment and harassing her because of her race, by, inter alia, removing her from her course mid-semester, removing Plaintiff 's official professor title on Pace's public online system, while she was actively teaching, and filing a false negative end of year evaluation, effectively severely limiting, if not terminating, any future employment opportunities with the University.

56b.    As a direct and proximate result of the Defendants' unlawful discriminatory

conduct, retaliatory conduct and harassment in violation of New York State Human Rights

Law, Plaintiff has suffered and continues to suffer financial and economic damages as well as

mental anguish and emotional distress, including but not limited to, depression, humiliation,

embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain

and suffering.

56c.    Defendants' unlawful discriminatory conduct, retaliatory conduct and

harassment constitute a willful and wanton violation of New York State Human Rights Law, was

outrageous and malicious, was intentional, and was done with reckless indifference to her civil

rights, entitling Plaintiff to an award of punitive damages.

## SIXTH CAUSE OF ACTION

**(Discrimination, Harassment and Retaliation in Violation of New York City Human Rights Law)**

57.    Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs

as if fully set forth therein.

57a.    Defendants have discriminated against Plaintiff, retaliated against her and harassed her in

violation of New York City Human Rights Law by subjecting Plaintiff to disparate

treatment and harassing her because of her race, by, inter alia, removing Plaintiff

from her course mid-semester, removing her official professor title on Pace's public online

system while she was actively teaching, and filing a false and negative end of year evaluation,

effectively severely limiting, if not terminating, any future employment opportunities with the University.

57b.    As a direct and proximate result of the Defendants' unlawful discriminatory conduct, retaliatory conduct and harassment in violation of New York City Human Rights Law, Plaintiff has suffered and continues to suffer financial and economic damages as well as severe mental anguish and emotional distress, including but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

57c.    Defendants' unlawful discriminatory conduct, retaliatory conduct and harassment constitute a willful and wanton violation of New York City Human Rights Law, was outrageous and malicious, was intentional, and was done with reckless indifference to her civil rights, entitling Plaintiff to an award of punitive damages.

## SEVENTH CAUSE OF ACTION

### (Defamation Per Se in Violation of New York State Common Law)

58.    Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth therein.

58a.    Defendants have defamed Plaintiff per se in violation of New York State Common Law by subjecting her to false claims by, inter alia, removing her from her course mid-semester, removing her official professor title on Pace's public online system while she was

actively teaching, and filing a false and negative end of year evaluation, effectively severely limiting, if not terminating, any future employment opportunities with the University.

58b.   As a direct and proximate result of the Defendants' unlawful defamatory conduct in violation of New York State Common Law, Plaintiff has suffered and continues to suffer financial and economic damages as well as mental anguish and emotional distress, including but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

58c.   Defendants' unlawful defamatory conduct has damaged Plaintiff's reputation as a professor, entitling her to damages for that particular harm.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Wendy Harte respectfully requests that the Court enter judgment against defendants Pace University, Dr. Sarah Blackwood and Dr. Stephanie 98su, as follows:

A.   A finding that defendants intentionally discriminated against Plaintiff based on her race as a Black African American in violation of her rights under Title VII of the Civil Rights Act of 1964, as amended, and the Civil Rights Act of 1991;

B.   A finding that defendants intentionally discriminated against Plaintiff based on her race as a Black African American in violation of her rights under 42 U.S.C § 1981 (Section 1981");

C.     A finding that defendants intentionally discriminated against Plaintiff based on her race as a Black African American in violation of her rights under the New York State Human Rights Law;

D.     A finding that defendants intentionally discriminated against Plaintiff based on her race as a Black African American in violation of her rights under Title 8 of the New York City Administrative Code;

E.     A finding that defendants intentionally discriminated against Plaintiff through their deliberate indifference or grossly negligent behavior which facilitated, aided or abetted discriminatory conduct, condoned, and/or enabled the hostile work environment she was subjected to at Pace University, in violation of her rights under the New York State Human Rights Law and the New York City Human Rights Law;

F.     An award in favor of plaintiff Wendy Harte and against the defendants Pace University, Dr. Sarah Blackwood and Dr. Stephanie Hsu, for back pay, front pay, and emotional distress damages, for having violated her rights under Title VII of the Civil Rights Act of 1964, as amended, and the Civil Rights Act of 1991 and under Section 1981;

G.     An award in favor of plaintiff Wendy Harte and against the defendants Pace University, Dr. Sarah Blackwood and Dr. Stephanie Hsu, for back pay, front pay, and emotional distress damages, for having violated her rights under the New York State Human Rights Law and the New York City Human Rights Law;

H.      Judgment in an amount to be determined at trial for punitive damages due to the willful, intentional, malicious and reckless acts of the defendants Pace University, Dr. Sarah Blackwood and Dr. Stephanie Hsu, which deprived Plaintiff of her right not to be subjected to unlawful discriminatory harassment based on her race as a Black African American, in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Civil Rights Act of 1991 and Section 1981;

I.      Judgment in amounts to be determined at trial for punitive damages due to the unlawful discriminatory acts of the defendants Pace University, Dr. Sarah Blackwood and Dr. Stephanie Hsu, which violated Plaintiff's right not to be subjected to unlawful discrimination based on her race as a Black African American, under the New York State Human Rights Law;

J.      Judgment in amounts to be determined at trial for punitive damages due to the unlawful discriminatory acts of the defendants Pace University, Dr. Sarah Blackwood and Dr. Stephanie Hsu, which violated Plaintiff's right not to be subjected to unlawful discrimination based on her race as a Black African American, under the New York City Human Rights Law;

K.      An award of remedial relief in the form of mandatory workshops for all employees at Pace University regarding zero tolerance for employment discrimination/harassment on the basis of race and other protected classes, and, if appropriate, revision and dissemination of Pace University's anti-discrimination policies;

L.     An award of Plaintiff's reasonable attorneys' fees, expert witness fees, and costs of this litigation; and

M.     An award of such other and further relief as this Court deems just.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated:  May 9, 2022

Plaintiff Wendy Harte

20 Cortlandt Avenue

New Rochelle, N.Y. 10801

917.579.3348

hartewendy@hotmail.com

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 520-2021-05067 |

## NEW YORK STATE DIVISION OF HUMAN RIGHTS and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) **MS. WENDY HARTE** | Home Phone **(917) 579-3348** | Year of Birth |
|---|---|---|

| Street Address | City, State and ZIP Code |
|---|---|
| **20 CORTLANDT AVENUE, NEW ROCHELLE,NY 10801** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name **PACE UNIVERSITY** | No. Employees, Members **Unknown** | Phone No. **(212) 346-1930** |
|---|---|---|

| Street Address | City, State and ZIP Code |
|---|---|
| **1 PACE PLAZA, MANHATTAN, NY 10038** | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|

| Street Address | City, State and ZIP Code |
|---|---|

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☒ RETALIATION ☐ AGE ☐ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **03-26-2021**   Latest **06-11-2021**

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

**My name is Wendy Harte. I began working as an instructor for Pace University in July 2013.**

**Throughout my employment, I experienced retaliation after reporting harassment from my students. After reporting this behavior, I was removed from one of my assigned courses and received a negative performance evaluation. I complained to Human Resources, my supervisor, and the union, but to my knowledge, no action was taken. I was constructively discharged from my position on June 11, 2021.**

**I believe I have been retaliated against on the basis of my involvement in protected activity, in violation of Title VII of the Civil Rights Act of 1967, as amended.**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Digitally signed by Wendy Harte on 12-20-2021 07:00 PM EST** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

**4. ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

**5. WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

**1. FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

**2. AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C.
704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an

ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so <u>within 15 days</u> of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To: **Ms. Wendy Harte**
**20 Cortlandt Avenue**
**NEW ROCHELLE, NY 10801**

From: **New York District Office**
**33 Whitehall St ,5th Floor**

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2021-05067** | **Krista Jolivette,** **Investigator** | **(929) 506-5281** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court** **WITHIN 90 DAYS** **of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

Less than 180 days have elapsed since the filing date. I certify that the Commission's processing of this charge will not be completed within 180 days from the filing date.

The EEOC is terminating its processing of this charge.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

**VANESSA GUEST**   Digitally signed by VANESSA GUEST Date: 2022.02.09 09:06:38 -05'00'   FOR   2-9-2022

**Judy Keenan,** **District Director**   *(Date Mailed)*

Enclosures(s)

cc: **Stephen Brodsky**
**University Counsel**
**PACE UNIVERSITY**
**163 William Street 19th Floor**
**New York, NY 10038**

Form 161-B (11/09)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

PRIVATE SUIT RIGHTS    --    **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the**
**Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in**
**Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of
the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right
to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly.
Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to
avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this
Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court
is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your
attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case
which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted
by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where
the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where
the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can
get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your
complaint or make legal strategy decisions for you.

PRIVATE SUIT RIGHTS    --    **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due
for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were
underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order
to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under
Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA
or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year
EPA back pay recovery period.

ATTORNEY REPRESENTATION    --    **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case
may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court
in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should
be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to
bring suit within 90 days.

ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions
about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of
information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your
Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on
the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this
Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*