USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 3/29/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HARTE., <br><br>                  **Plaintiff,** <br><br> -against- <br><br> PACE UNIVERSITY, *et al.*, <br><br>                  **Defendants.** | **22-cv-03820 (ALC)** <br><br> <u>**OPINION & ORDER**</u> |

**ANDREW L. CARTER, United States District Judge:**

      Plaintiff Wendy Harte ("Plaintiff"), an Assistant Adjunct English Professor proceeding *pro se*, brings this discrimination and defamation action against her former employer, Pace University, as well as University President Marvin Krislov, Associate Professor Sarah Blackwood, Associate Professor Stephanie Hsu, Title IX Investigator Bernadette Baumann, and Assistant Director of Employee and Labor Relations Sia Bundor ("Defendants"). ECF No. 57 ("SAC") at ¶¶ 7-13. Defendants moved to dismiss the Complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) on May 26, 2023. ECF Nos. 62-65. For the reasons stated below, Defendants' motion is **GRANTED in part and DENIED in part**.

## BACKGROUND

### I.    Procedural Background

      Prior to the filing of the initial Complaint in this case, Plaintiff filed a Charge of Discrimination with both the New York State Division of Human Rights and the Equal Employment Opportunity Commission on December 20, 2021. ECF No. 2. In those filings, Plaintiff indicated that she experienced discrimination based on retaliation. *Id.* at 43. In the written narrative of her Charge, Plaintiff wrote the following:

> My name is Wendy Harte. I began working as an instructor for Pace University in July 2013.
> Throughout my employment, I experienced retaliation after reporting harassment from my students. After reporting this behavior, I was removed from one of my assigned courses and received a negative performance evaluation. I complained to Human Resources, my supervisor, and the union, but to my knowledge, no action was taken. I was constructively discharged from my position on June 11, 2021.
> I believe I have been retaliated against on the basis of my involvement in protected activity, in violation of Title VII of the Civil Rights Act of 1967, as amended.

*Id.* Plaintiff then received a Right to Sue Letter from the EEOC on September 9, 2022. *Id.* at 46.

Plaintiff filed her initial complaint against Defendants on May 11, 2022. ECF No. 2. After being granted leave to proceed *in forma pauperis*, on June 10, 2022, Plaintiff amended her complaint *sua sponte* on July 13, 2022. ECF Nos. 4, 10. Plaintiff then amended her complaint a second time on April 14, 2023.

The SAC raises seven causes of action against all Defendants: (1) race discrimination under 42 U.S.C. § 1981, (2) retaliation under 42 U.S.C. § 1981, (3) race discrimination under Title VII, (4) retaliation under Title VII, (5) race discrimination and retaliation under the New York State Human Rights Law ("NYSHRL"), (6) race discrimination and retaliation under the New York City Human Rights Law ("NYCHRL"), and (7) defamation per se under New York state common law. *See* SAC ¶¶ 389-416.

Defendants have now moved to dismiss the SAC pursuant to Fed. R. Civ. P. 12(b)(6).

II.     **Factual Background**

The operative facts arise out of an Introduction to Critical Race and Ethnicity Studies class that Plaintiff taught at Pace University during the Spring 2021 Semester. SAC ¶ 101. Plaintiff alleges that the students in her class were disruptive and at times yelled at her and

accused her of interrupting students when they were speaking. *Id.* at ¶¶ 102-107. Plaintiff alleges that she experienced significant race-based bullying from students in a few class sessions in early February and reached out to Defendant Dr. Hsu for help. *Id.* at ¶¶ 104-121. While Defendant Hsu declined to speak to Plaintiff's students as requested, Dr. Hsu allegedly agreed to review a draft email Plaintiff would send to the students. *Id.* at ¶¶ 121-123. Despite the initial agreement, Dr. Hsu did not respond to the draft email before Plaintiff sent it out to the entire class. *Id.* at ¶¶ 123-125.

A few days later, Defendant Hsu then allegedly emailed Plaintiff after having been contacted by several of Plaintiff's students and recommended to Plaintiff that she alter her course to incorporate more student discussion, minimize didactic lecturing, avoid discussions of white supremacy, and attempt to deescalate the classroom tension. *Id.* at ¶ 134, 139, 143. In a conversation with Plaintiff around this same time, Defendant Hsu also allegedly made the following statement:

> "I've definitely broached the subject of anti-Black racism with the students I've talked to, and I believe that they're aware of the potential impact on you, and there's a lot of distress about it. In practical terms, we need to deescalate the tension, and I think that allowing them to control more of the discussion topics in class – reducing the professor v. student opposition – is the way to do that."

SAC ¶ 143. Defendant Hsu then allegedly observed Plaintiff's class the following day and encouraged Plaintiff to implement her recommendations. *Id.* at ¶¶ 150-151. Plaintiff then met with Dr. Hsu via Zoom after the classroom observation and requested to lodge her complaints about students' conduct and classroom engagement with Defendant Blackwood. *Id.* at ¶ 154. In that meeting, Dr. Hsu allegedly told Plaintiff to "[d]rop the complaint or students will boycott and teachers will be expelled." *Id.* at ¶ 159.

Plaintiff then met with Drs. Blackwood and Hsu via Zoom a few days later and informed Dr. Blackwood of her experiences of "race-based, anti-black bullying" from her students and

asked that she be able to record her upcoming lectures. *Id.* at ¶¶ 167, 171. In response, Dr. Blackwood made the same recommendations as Dr. Hsu—namely that Plaintiff permit the students to speak among themselves—but agreed to Plaintiff's request to record. *Id.* Dr. Blackwood also connected Plaintiff with Tiffany Hamilton, the University's Chief Diversity Coordinator and Associate Vice President for Diversity and Inclusion. *Id.* at ¶¶ 175-176. Dr. Hsu allegedly then sent an email to Ms. Hamilton, reviewed and approved by Plaintiff, discussing the issues in Plaintiff's class. *Id.* at ¶ 179. Plaintiff alleges that Ms. Hamilton then encouraged her to establish a "community agreement" with her students, an exercise in which Plaintiff refused to participate in. *Id.* at ¶¶ 189-190.

Later, in early March, Plaintiff reached out again to Ms. Hamilton regarding a "disturbing incident" that occurred in her class. *Id.* at ¶ 192. Ms. Hamilton referred Plaintiff to Dean Todd Smith-Bergollo, interim Senior Associate Dean for Students, and informed Plaintiff that she could no longer assist her. *Id.* at ¶¶ 192-193. Plaintiff reached out to Smith-Bergollo who agreed to speak to the student inciting the disturbing incident. *Id.* at ¶¶ 196-197.

Prior to that meeting, Plaintiff informed Dr. Blackwood of these developments via email to which Dr. Blackwood allegedly responded that Plaintiff was not allowed to ask a student not to attend class and that further meetings between the two might have been necessary. *Id.* at ¶¶ 202-203, 206. Later that week, Dr. Blackwood allegedly then informed Plaintiff that she would be observing the class. *Id.* ¶ 208a-208b. Dr. Blackwood did so the following day and introduced herself at the beginning of the class and later directed Plaintiff privately to not interject during a student's presentation. *Id.* at ¶ 208i-208p. After class, students raised complaints to Plaintiff and Ms. Blackwood about the classroom presentations and their grades. *Id.* at ¶¶ 208q-209.

At the subsequent meeting with Mr. Smith-Bergollo, Defendant Baumann and Plaintiff's union representative, Plaintiff presented her experiences of bullying. *Id. at* ¶ 230. Despite his initial willingness to speak with the students, Plaintiff alleges that Mr. Smith-Bergollo stated at the meeting that he would only speak to the student bullies if there was evidence of the alleged bullying. *Id.* at ¶ 242. Plaintiff did not present any evidence and ceased contact with Mr. Smith-Bergollo. *Id.* at ¶¶ 243, 250.

A few days following her meeting with Mr. Smith-Bergollo, Plaintiff received an email from Dr. Blackwood, copying Defendant Baumann, asking her to meet to discuss issues with Plaintiff's class. *Id.* at ¶¶ 252-254. That meeting took place approximately a week later and was attended by Plaintiff, Dr. Blackwood, Dr. Hsu, and Ms. Baumann, and Plaintiff's union representative. *Id.* at ¶ 257. Plaintiff alleges that Drs. Blackwood and Hsu accused her of "having faulty perceptions of what had been occurring in [her] class, . . . retaliating against students, particularly those students[,] . . . [and] punishing, curtailing, and/or suppressing the . . . students' freedom of speech." *Id.* at ¶ 261. Following the meeting, Drs. Blackwood and Hsu observed another one of Plaintiff's classes in which Plaintiff alleges that her students continued engaging in bullying conduct. *Id.* at ¶¶ 288-290. Following that observation, Dr. Blackwood removed Plaintiff from her class mid-semester and paid Plaintiff the balance of her salary for the class. *Id.* at ¶ 291. Plaintiff also received low teaching rating reviews from Dr. Blackwood in the summer following the end of the spring term and had her title removed from the University's system. *Id.* at ¶ 325.

**LEGAL STANDARD**

When considering a 12(b)(6) motion, a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine

whether they plausibly give rise to an entitlement of relief." *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficiently factual matter accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2 1059, 1067 (2d Cir. 1985). A reviewing court ought not dismiss a complaint where "enough facts to state a claim to relief that is plausible on its face" have been plead." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 663.

## DISCUSSION

### I. Title VII

It is unlawful under Title VII of the Civil Rights Act of 1964 for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] color." 42 U.S.C. § 2000e-2(a)(1).

As a threshold matter, Plaintiff's Title VII claims against the individual defendants Krislov, Hsu, Baumann, and Bundor must be dismissed because "individuals are not subject to liability under Title VII." *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004)

(citation and quotation marks omitted). As such, the remaining subsections consider Title VII liability only as alleged against Defendant Pace University.

### A. Exhaustion of Administrative Remedies

"As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003). "Filing an administrative complaint with the EEOC is a statutory prerequisite to maintaining a Title VII action in the district court" and must be done "within 300 days of the alleged discrimination in a state, like New York, with a fair employment agency." *Pikulin v. City Univ. of N.Y.*, 176 F.3d 598, 599 (2d Cir. 1999). "Loose pleading is permitted before the EEOC" such that "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 177 (2d Cir. 2005) (citing *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 684, 686 (2d Cir. 2001)). "Reasonably related conduct is that which would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Id.* (citing *Fitzgerald v. Henderson*, 251 F.3d 345, 359-60)) (internal quotations omitted). This inquiry focuses "on the factual allegations made in the [EEOC] charge itself" and primarily considers whether "the complaint filed with the EEOC gave the agency adequate notice to investigate discrimination."

Here, Plaintiff's Discrimination Charge claimed that she "experienced retaliation after reporting harassment from [her] students" in the form of "remov[al] from one of [her] assigned courses and . . . a negative performance evaluation . . . on the basis of [her] involvement in protected activity." ECF No. 2 at 43. Plaintiff's charge makes no reference to race-based discrimination and harassment she alleges occurred in her operative complaint. The EEOC

charge contains "no descriptions of racial harassment or racial discrimination, and in fact, no mention of race at all." *Little v. NBC*, 210 F. Supp. 2d 330, 375 (S.D.N.Y. 2002). As such, Defendants argue that the EEOC charge "would not lead an investigation into possible race discrimination and racial harassment [and] Plaintiff has failed to exhaust [her] administrative remedies with respect to these claims." *Id.*

In her opposition filing, Plaintiff acknowledges that her discrimination charge only raised a retaliation claim against her former employer but still attempts to cure the charge's deficiencies by presenting to the Court emails she sent to EEOC personnel *after* she submitted her EEOC charge that indicated she wished to file discrimination and harassment claims alongside her retaliation claim. *See* ECF No. 66 ("Opp.") at 22; *see also id.* at Exhibit B. Plaintiff's argument fails for several reasons. First, even assuming, *arguendo*, that such email correspondences could be consolidated into Plaintiff's EEOC charge, none of the email messages Plaintiff presents were sent to EEOC personnel before she submitted her final charge. While Plaintiff states that she met with EEOC investigating officers prior to filing her charge, she presents no pre-charge correspondences or other such evidence to support her argument that EEOC personnel understood her charge to include claims of harassment and discrimination. Opp. at 21-22. As such, EEOC personnel would not have been led to investigate plaintiff's claims of discrimination and harassment. Second, in order for her charge document to have adequately presented to the EEOC claims for harassment and discrimination, Plaintiff would have had to note her membership in a protected class. *See Shine v. City of N.Y.*, No. 19-CV-8162 (JPO), 2021 U.S. Dist. LEXIS 42781, at *2-*3 (S.D.N.Y. Mar. 8, 2021). For her email correspondences to the EEOC to have cured her insufficient charge document, assuming *arguendo* again that such was even possible, those emails would have needed to at least conform to those same requirements

set forth for charge documents themselves. Yet, Plaintiff does not state her membership in a protected class in any of the emails that she cites to the Court. Third, the predominant concerns underlying the loose pleading standard which governs charge documents are "the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [she] is suffering." *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (citing *Deravin*, 335 F.3d at 201). While not a practicing attorney, the fact that Plaintiff is herself a law school graduate and previously passed the California bar exam diminishes the Court's concern as to the fact that Plaintiff lacked counsel when she filed her charge with the EEOC. *See* Opp. at 3-4.

As such, the Court dismisses Plaintiff's Title VII race-based discrimination and harassment claims against Defendants for failure to exhaust administrative remedies. *See Gilani v. NASD*, 96 CV 8070, 1997 U.S. Dist. LEXIS 12287, at *16 (S.D.N.Y. Aug. 18, 1997) (dismissing Title VII race-based discrimination and harassment claims where the plaintiff exclusively raised a retaliation claim and "d[id] not specifically indicate examples of racial discrimination against himself" in his EEOC charge); *Walsh v. Nat'l Westminster Bancorp.*, 921 F. Supp. 168, 172 (S.D.N.Y. 1995) (doing the same).

### B. Retaliation Claims

Because Plaintiff's timely EEOC charge did sufficiently incorporate a retaliation claim and Plaintiff received a Right to Sue letter from the agency for that charge, she has sufficiently exhausted her administrative remedies as to that claim. The Court considers next whether Plaintiff has sufficiently pleaded a valid retaliation claim under Title VII. "[F]or a retaliation claim to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated or took an adverse employment action against

him, (2) because he has opposed any unlawful employment practice." *Vega v. Hempstead*, 801 F.3d 72, 90 (2d Cir. 2015) (citing 42 U.S.C. § 2000e-3(a)).

### i. Adverse Employment Action

An adverse employment action for retaliation under Title VII is "any action that could well dissuade a reasonable worker from making or supporting a charge of discrimination. *Id.* at 90. While the adverse action must go farther than "petty slights or minor annoyances," reviewing Courts are to look to the workers' context to determine "[t]he reason social impact of workplace behavior" as it "often depends on a constellation of surrounding circumstances expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Burlington N. & Santa Fe RY. Co. v. White*, 548 U.S. 53, 68-69 (2006). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices … unique to a particular situation." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000).

Plaintiff's removal from teaching her course and her negative teaching evaluation are both sufficient material adverse employment actions. These are the types of actions which "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 57. Removal from teaching responsibilities, even where, as here, an adjunct professor is paid for the remaining balance of her teaching responsibilities, would constitute a material reduction in employment responsibilities. And, "of course, a poor performance evaluation could very well deter a reasonable worker from complaining." *Vera*, 801 F.3d at 92.

### ii. Causation

To sufficiently plead a causal connection, a Title VII retaliation Plaintiff must establish that the alleged adverse action "would not have occurred in the absence of the alleged wrongful action" of the employer. *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir.2013) (internal citation omitted). "[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). Additionally, the Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013) (internal quotation marks omitted). "This has allowed [courts] to exercise [] judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." *Id.* (citing *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009)).

Plaintiff alleges in the SAC that Defendants retaliated against her for complaining of her students' racially discriminatory bullying by removing her teaching from her course mid-semester, removing her official professor title from the University's online system, and by negatively evaluating her teaching. SAC ¶ 402.

Plaintiff's filings adequately allege causation by temporal proximity. Plaintiff was dismissed from her teaching obligations within days of her final meeting with Mr. Smith-Bergollo and Defendants in which she raised her complaints about the students' conduct. While

the negative teaching evaluation was not submitted against Plaintiff until two months after her final meeting with Mr. Smith-Bergollo and Defendants, they appear to have been submitted soon after the close of the semester. There is sufficient reason here to find the short time span between Plaintiffs' final meeting with University personnel and her removal from teaching and receipt of a negative evaluation is sufficient to establish causation. *See Espinal*, 588 F.3d at 129 (finding sufficient causation where six months passed between protected activity and retaliatory conduct); *Hubbard v. Total Commc'ns, Inc.*, 347 F. App'x 679, 681 (2d Cir. 2009) (doing the same with four-month gap) (summary order).

Despite this, Plaintiff's pleadings are silent as to when her title was removed from the University's online system. Because of this, this Court has no way to determine the temporal proximity of this alleged adverse action and Plaintiff's protected activity. Therefore, Plaintiff's Title VII complaint pursuant to this particular alleged injury is insufficiently pleaded.

## II.     Section 1981

Plaintiff also raises claims against Defendants for discrimination and retaliation in violation of 42 U.S.C. § 1981. Because "[r]etaliation claims under Title VII and § 1981 are both analyzed pursuant to Title VII principles," this Court finds that Plaintiff has adequately pleaded a retaliation claim under § 1981 for those reasons stated in the preceding section as against Defendants Blackwood, Hsu, and Baumann.[1]

---

[1] "An individual may be held liable under §§ 1981 and 1983 only if that individual is personally involved in the alleged deprivation." *Littlejohn,* 795 F.3d at 314 (citing *Patterson v. Cnty. Of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004) (internal quotation marks omitted). Plaintiff has failed to allege Defendant Krislov or Bundor's knowledge of, let alone personal involvement in her retaliation claim and, as such, the claims as against these Defendants may not proceed.

### i. Discrimination

Section 1981 claims for employment discrimination are recognized where a plaintiff shows that "(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Harris v. NYC Human Res. Admin.*, 2021 U.S. Dist. LEXIS 162763, at *14 (S.D.N.Y. Aug. 27, 2021) (citing *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 324 (S.D.N.Y. 2020)) (internal quotation marks omitted).

To survive a motion to dismiss on a claim of employment discrimination under § 1981, a plaintiff must "alleg[e] facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega*, 801 F.3d at 87. To establish discriminatory intent, a Section 1981 plaintiff must "specifically allege the circumstances giving rise to a plausible inference of racially discriminatory intent." *Id.* At the motion to dismiss stage, "the question is not whether a plaintiff is likely to prevail, but whether the well-pleaded factual allegations plausibly give rise to an inference of unlawful discrimination, i.e., whether plaintiffs allege enough to nudge their claims across the line from conceivable to plausible." *Vega*, 801 F.3d at 87 (quoting *Twombly*, 550 U.S. at 570) (internal quotation marks omitted). "A plaintiff's naked allegation of racial discrimination on the part of a defendant is too conclusory to survive a motion to dismiss." *Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988).

Plaintiff's submissions fail to establish Defendants acted with the requisite discriminatory intent. While Plaintiff states throughout her filings that Defendants' actions were motivated by racial animus, Plaintiff's own factual narrative establishes that Defendants, upon receiving student complaints and observing Plaintiff's classroom behavior on several occasions, informed

Plaintiff that her own pedagogical approach was inappropriate. While Plaintiff alleges that her own students made several racially disparaging comments to and about her, Plaintiff does not adequately allege that Defendants made similar such statements to her at any junction. Plaintiff also does not present any evidence of disparate treatment supporting an inference of discriminatory intent.

Yet, Plaintiff does argue that certain statements made by Dr. Hsu portrayed racial animus. These statements include the one discussed in a previous section stating that Plaintiff's continued pursuit of her complaint might stroke student unrest and another in which Dr. Hsu allegedly stated, as follows:

> "I've definitely broached the subject of anti-Black racism with the students I've talked to, and I believe that they're aware of the potential impact on you, and there's a lot of distress about it. In practical terms, we need to deescalate the tension, and I think that allowing them to control more of the discussion topics in class – reducing the professor v. student opposition – is the way to do that."

SAC ¶ 143. Even making all possible inferences in Plaintiff's favor as is necessary at the present stage of the litigation, this Court can not find any discriminatory intent or inference thereof in these statements. This claim is therefore dismissed.

### III. NYSHRL & NYCHRL

#### i. Retaliation & Discrimination

While the NYCHRL's retaliation analysis is "broader" than that stated under Title VII, *Fincher v. Depository Tr. & Clearing Corp*, 604 F.3d 712, 723 (2d Cir. 2010), "[t]he same standards govern retaliation claims" under Title VII and the NYSHRL. *Farmer*, 473 F. Supp. 3d at 330. As such, Plaintiff's retaliation claims based upon her negative teaching evaluation and reduction in teaching under the NYCHRL and NYSHRL as against Defendant Pace University survive the motion to dismiss.

As in the federal context, a plaintiff bringing claims under the NYSHRL for discrimination must allege "facts supporting a minimal inference that the employer's adverse action was motivated by the alleged discrimination." *Id.* at 328. As stated previously, Plaintiff has failed to allege facts supporting such an inference.

Under the NYCHRL, a plaintiff alleging discrimination need only show "unequal treatment based upon membership in a protected class." *Nieblas-Love v. New York City Hous. Auth.*, 165 F. Supp. 3d 51, 68. However, "petty, slight, or trivial inconveniences are not actionable," *Bermudez*, 783 F. Supp. 2d at 579, and the "plaintiff still bears a burden of showing that the conduct . . . is caused by a discriminatory motive." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (internal quotation marks omitted). Plaintiff has not alleged any facts establishing that she was treated any differently than others who engaged in similar conduct. What's more, for the reasons stated previously, Plaintiff's alleged facts fail to give rise to an inference of discriminatory motivation even under the NYCHRL's minimal pleading standard.

### ii. Individual Liability

"[I]ndividual employees who actually participate[d] in the conduct giving rise to plaintiff's retaliation claim" may be held individually liable under both the NYSHRL and NYCHRL. *Schaper v. Bronx Leb. Hosp. Ctr.*, 408 F. Supp. 3d 379, 395 (S.D.N.Y. 2019) (quoting *Dillon v. Ned Mgmt., Inc.*, 85 F. Supp. 3d 639, 662 (E.D.N.Y. 2015)) (cleaned up). The NYSHRL permits individual liability where a person "aid[s], abet[s], incite[s], compel[s] or coerce[s] the doing of any of the acts forbidden under this article, or to attempt to do so." N.Y. Exec. Law § 296(6). Individual liability under the NYSHRL lies only for those individuals who "ha[ve] an ownership interest in the relevant organization or the power to do more than carry out

personnel decisions made by others." *Townsend v. Benjamin Enterprises, Inc.*, 679 F.3d 41, 57 (2d Cir. 2012) (quoting *Patrowich v. Chem. Bank*, 63 N.Y.2d 541, 473 N.E.2d 11, 483 N.Y.S.2d 659 (N.Y. 1984)).  The NYCHRL provides a "broader basis for direct individual liability" as there, individual liability may lie "regardless of ownership or decisionmaking." *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012) (quoting *Banks v. Corr. Servs. Corp.*, 475 F. Supp. 2d 189, 200 (E.D.N.Y. 2007)).

Plaintiff has adequately pleaded only Defendants Blackwood, Hsu, and Baumann's actual participation in the relevant conduct.  The complaint also contains sufficient pleading, at least at the present stage, as to Defendant Blackwood's authority in the workplace.  *See* Compl. at ¶ 291 (indicating that Defendant Blackwood sent the letter which notified Plaintiff of her removal from her teaching obligations); Compl. at ¶ 149 (alleging that students filed their complaints regarding Plaintiff with Defendant Hsu); *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995) (finding an individual defendant without the authority to hire or fire the plaintiff liable under the NYSHRL where the defendant had the ability to review and comment on the plaintiff's performance).  The complaint makes no such allegations as to Defendants Baumann, and, as such, Plaintiff's NYSHRL claim as against these individual Defendants must be dismissed.

## IV.    Defamation Per Se

"The New York Court of Appeals has recognized four categories of statements as defamatory per se: (1) those that accuse the plaintiff of a serious crime; (2) those that 'tend to injure another in his or her trade, business or profession; (3) those that accuse the plaintiff of having a 'loathsome disease; or (4) and those that impute 'unchastity to a woman.'" *Stern v. Cosby*, 645 F. Supp. 2d 258, 288 (S.D.N.Y. 2009) (citing *Liberman v. Gelstein*, 80 N.Y.2d 429, 435, 590 N.Y.S.2d 857, 860, 605 N.E.2d 344, 346 (1992)).  To adequately plead a case for

defamation per se, a plaintiff must allege that "(1) that statement concerns the plaintiff; (2) one or more of the Defendants communicated the statement to someone other than Plaintiff; (3) the statement is false – i.e., not substantially true; (4) one or more of the Defendants acted at least negligently in publishing the statement; and (5) Plaintiff suffered damages as a result of the publication of the statement." *Bouveng v. NYG Capital LLC*, 175 F.Supp.3d 280, 319 (S.D.N.Y. 2016) (internal citations and quotations omitted). Nonactionable opinion statements can be distinguished from potentially actionable statements of fact by considering the following factors:

> (1) whether the specific language in issue has a precise meaning which is readily understood;
> (2) whether the statements are capable of being proven true or false; and
> (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact.
>
> *Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 153, 623 N.E.2d 1163, 603 N.Y.S.2d 813 (1993)

(alteration omitted) (citations and quotations omitted). Nevertheless, statements of opinion which "impl[y] a basis in facts which are not disclosed to the reader or listener" may still be actionable "because a reasonable listener or reader would infer that the speaker or writer knows certain facts, unknown to the audience, which support the opinion and are detrimental to the person toward whom the communication is directed." *Id.* at 153-154.

There is also a qualified privilege under New York law for defamation where a "communication made by a person with an interest or duty to make the communication and sent to a person with a corresponding interest or duty is protected by a qualified privilege, even though without the privilege the communication would be slanderous and actionable." *Weldy v. Piedmont Airlines*, 985 F.2d 57, 62 (2d Cir. 1993) (internal quotations and citations omitted). This qualified privilege applies "to statements among employees of an organization in furtherance of the common interest of their employer." *Sanderson v. Bellevue Maternity Hosp.*,

259 A.D.2d 888, 889-890, 686 N.Y.S.2d 535, 536 (App. Div. 3rd Dept. 1999) (internal citation omitted).

Defendant alleges that all Defendants defamed her "by subjecting[her] to knowingly false and defamatory claims by, inter alia, removing [her] from [her] course mid-semester, removing [her] official professor title on Pace's public online system . . . and filing a false and negative end of year evaluation" against her. Compl. at ¶ 414. Because the complaint is unclear as to which particular statements Plaintiff alleges were defamatory, this Court considers each potentially defamatory statement in turn.

Insofar as Plaintiff's defamation per se claim is predicated upon the statements Defendant Hsu and Blackwood made to Plaintiff during meetings in the spring of 2021 or upon statements Dr. Blackwood made to Plaintiff in her evaluation, these statements must be dismissed as covered under the qualified privilege.

Plaintiff alleges in her Reply submission that Defendant Hsu made several comments to the students in her class which, taken together, intimate that Plaintiff herself was a racist. These alleged statements include one that students' evaluations would "go in [Plaintiff's] file and follow [her]," that "their labor is going to have its impact," and that Plaintiff had been paid for the semester. ECF No. 66 ("Reply") at 32. Plaintiff also alleges that Defendant Hsu's remarked to students that their experience in Plaintiff's Critical Race and Ethnicity Studies course had been "meta" and had lead a discussion on the phenomenon of "blackfishing," which Plaintiff defines as "the act of someone who is not Black pretending to be Black." *Id.* at 32-33. Plaintiff also alleges that Defendant Hsu emailed messages to those students who had previously unenrolled from Plaintiff's class stating that Plaintiff had been "replaced" encouraging them to re-enroll,

and stating that Defendant Hsu "regret[ted] any stress [students] may have experienced th[at] semester." *Id.* at 32-34.

None of these statements are sufficient to establish a claim for defamation per se. Many of these statements do not qualify as defamation as they are, by Plaintiff's own view of the facts, not false. It appears to be true that students' evaluations of Plaintiff would go into her employment records, that those evaluations would impact Plaintiff's employment, and Plaintiff was paid for the full semester of work. Defendant Hsu's statement that she regretted students' prior stress and that students had a "meta" experience at best constitute inactionable opinion and, at worst, make no statement concerning Plaintiff at all. And finally, Plaintiff's allegation that Defendant Hsu facilitated a discussion on "blackfishing" without any allegation of an accompanying specific statement the Defendant made concerning Plaintiff is insufficient as a matter of law.

## CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss is **GRANTED in part and DENIED in part**. Plaintiff's following claims survive Defendants' motion to dismiss:

1. Title VII Retaliation Claim as against Defendant Pace University;

2. Section 1981 Retaliation Claim as against Defendants Pace University, Blackwood, Hsu, and Baumann;

3. NYSHRL Retaliation Claim as against Defendants Pace University, Blackwood, and Hsu; and

4. NYCHRL Retaliation Claim as against Defendants Pace University, Blackwood, Hsu, and Baumann.

The Parties are hereby **ORDERED** to file a joint status report informing the Court of the pendency of this action by April 12, 2024.

**SO ORDERED.**

Dated:   **March 29, 2024**
         **New York, New York**

                                                                                 _____
                                                                                 **ANDREW L. CARTER, JR.**
                                                                                 **United States District Judge**