UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
WENDY HARTE,

       Plaintiff,      22-CV-03820 (JAV)

    -v-        OPINION AND ORDER

PACE UNIVERSITY, et al.,

       Defendants.
------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

  Plaintiff Wendy Harte ("Plaintiff"), proceeding *pro se*, filed this action alleging race discrimination, retaliation, and defamation *per se* against her former employer, Pace University, as well as University President Marvin Krislov, Associate Professor Sarah Blackwood, Associate Professor Stephanie Hsu, Title IX Investigator Bernadette Baumann, and Assistant Director of Employee and Labor Relations Sia Bundor ("Defendants"). ECF No. 57 at ¶¶ 7-13.

  On March 29, 2024, Judge Andrew Carter issued an Opinion and Order ("Opinion"), dismissing Plaintiff's racial discrimination, harassment, and defamation *per se* claims, and all claims against Krislov. ECF No. 71 at 1. On February 4, 2025, this case was reassigned from Judge Carter to the undersigned. Plaintiff now seeks leave to file an amended complaint reinstating the claims previously dismissed by Judge Carter, as well as sanctions against the Defendants. ECF No. 94. For the reasons that follow, Plaintiff's motion is DENIED.

## BACKGROUND

### A. Factual Allegations

Familiarity with the factual allegations in the pleadings, which are detailed in Judge Carter's Opinion, are presumed. As relevant here, Plaintiff, an Assistant Adjunct English Professor at Pace University, taught an Introduction to Critical Race and Ethnicity Studies class in the spring semester of 2021. ECF No. 57 ("Second Amended Complaint" or "SAC") ¶ 101. Plaintiff alleges that students in the class engaged in a campaign of race-based bullying. *Id.* ¶¶ 99-121. According to the SAC, when Plaintiff sought assistance from the university administration, their response was to recommend that she alter the course to focus on student discussion, minimize didactic lecturing, and avoid discussions of white supremacy. *Id.* ¶¶ 134-43. After several of the students raised complaints regarding Plaintiff to the university, her classes were observed at different times by both Defendant Hsu, the head of Pace University's American Studies ("AMS") program within the English Department, and Defendant Blackwood, who at the time was the interim Chairperson of the English Department. *Id.* ¶¶ 9-10, 150-51, 208-09. Plaintiff claims that, subsequently, at a meeting with Defendants Hsu, Blackwood, and Baumann (Executive Director of Employee and Labor Relations), *id.* ¶ 12, and Plaintiff's union representative, she was accused of having "faulty perceptions" of what had occurred in class, retaliating against students, and suppressing students' freedom of speech. *Id.* ¶ 261. Following further class observations, Defendant

Blackwood removed Plaintiff from teaching the class and paid her the balance of her salary for the semester. *Id.* ¶¶ 288-91.

### B. Procedural History

Plaintiff filed her initial Complaint in May 2022. ECF No. 2. She filed an Amended Complaint on July 13, 2022. ECF No. 10. On January 9, 2023, after Defendants file a pre-motion letter outlining their contemplated motion to dismiss, Plaintiff was given leave by the Court to again amend her complaint. ECF No. 45. The Second Amended Complaint was filed on April 14, 2023. ECF No. 57. In the Second Amended Complaint, Plaintiff asserted claims of discrimination and retaliation in violation of 42 U.S.C. § 1981 and Title VII, claims of harassment, discrimination and retaliation pursuant to New York State Human Rights Law and New York City Human Rights Law, and defamation per se. *Id.* ¶¶ 389-416.

Defendants moved to dismiss the Second Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 62-65. Judge Carter issued the Opinion on March 29, 2024, in which he dismissed Plaintiff's racial discrimination, harassment, and defamation per se claims but allowed some of Plaintiff's retaliation claims to go forward. Opinion at 20.

Specifically, the Opinion held that Plaintiff's Title VII claims against the individual defendants must be dismissed because individuals are not subject to liability under Title VII. Opinion at 6. With respect to Pace University, the Court held that Plaintiff had not exhausted her administrative remedies, because her

EEOC charge mentioned only retaliation and not race discrimination. *Id.* at 7-9. In opposition, Plaintiff conceded that the EEOC charge did not mention race discrimination, but argued that she had nonetheless sent other communications to the EEOC indicating that she wished to pursue race discrimination claims. *Id.* at 8. The Court rejected these arguments. The Court stated that, "even assuming, *arguendo*, that such email correspondences could be consolidated into Plaintiff's EEOC charge, none of the email messages Plaintiff presents were sent to EEOC personnel before she submitted her final charge." *Id.* The Court further found the proffered email communications insufficient to have cured the insufficiencies in her charge documents, because they did not note her membership in a protected class. *Id.* at 8-9.

With respect to Plaintiff's claims under Section 1981, the Court dismissed the claims against Defendant Krislov and Bundor for failure to allege personal involvement in any alleged retaliation. *Id.* at 12 n.1. Judge Carter also dismissed the race discrimination claims brought under Section 1981, NYSHRL, and NYCHRL for failure to allege that Defendants acted with the requisite discriminatory intent. *Id.* at 13, 15. The Opinion points out that the Second Amended Complaint alleges racially charged remarks made by students but not by Defendants. *Id.* at 13-14. Nor does the Complaint raise allegations of disparate treatment sufficient to support an inference of discriminatory intent. *Id.* at 14.

Finally, the Court held that Plaintiff had not adequately plead a claim of defamation *per se*. *Id.* at 16-19. The Court concluded that the statements that

4

Plaintiff claims were defamatory were subject to the qualified privilege that protects "statements among employees of an organization in furtherance of the common interest of their employer." *Id.* at 17 (quoting *Sanderson v. Bellevue Maternity Hosp.*, 259 A.D.2d 888, 889-90 (3d Dep't 1999)). Additionally, the Court determined that many of the challenged statements did not qualify as defamatory. *Id.* at 19.

An initial pretrial conference was held on November 19, 2024, ECF No. 91, and discovery is set to close in this case in August 2025, ECF No. 92. On February 6, 2025, however, Plaintiff filed a 38-page letter, titled "Request to Amend to Re-Include Racial Discrimination, Harassment, and Defamation Per Se Claims; Request to Include the Entire Spring 2021 Semester; Request to Restore Marvin Krislov as a Defendant; Request for Sanctions." ECF No. 94 ("Motion to Amend" or "Mot. to Am.") at 1. Although Plaintiff did not include a copy of the proposed Third Amended Complaint, she did append Plaintiff's EEOC intake form, *id.*, Ex. A, and correspondence with the EEOC, *id.*, Ex. C.

## LEGAL STANDARDS

Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs that leave to amend should be freely granted when justice so requires. Yet district courts nonetheless have "discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). An amendment is futile if it seeks to add a claim that would not withstand a motion to dismiss. *See, e.g., Margel*

5

*v. E.G.L. Gem Lab Ltd.*, No. 04 CIV. 1514 (PAC)(HBP), 2010 WL 445192, at *4 (S.D.N.Y. Feb. 8, 2010).

## DISCUSSION

It should be noted at the outset that Plaintiff's letter seeking leave to amend, running 38 pages single spaced, was not only far in excess of this Court's four-page limit for letter-motions, but it also exceeded by a wide margin the word limits on memoranda of law permitted by this Court. On this basis alone, the Court could have stricken Plaintiff's submission. In this instance, the Court declines to do so, and will evaluate Plaintiff's request on the merits. In future, however, Plaintiff is on notice that failure to abide by the Court's word and page limits will lead the Court to disregard her filings. The Court grants *pro se* plaintiffs a measure of latitude, but they must nonetheless abide by the same rules as all other litigants.

Unfortunately, in light of the unhelpful prolixity of Plaintiff's submission, it was difficult to discern to what extent Plaintiff sought to add new allegations to her pleading to cure the defects found by Judge Carter. Much of her submission focused on allegations that were already contained in the Second Amended Complaint. A close review of Plaintiff's filing, however, indicates that there are two specific areas that she intends to address if given leave to file an amended complaint.

### A. Allegations Regarding Plaintiff's Contacts with the EEOC

First, Plaintiff presents an EEOC intake form dated September 28, 2021, Mot. to Am., Ex. A, in which she stated that she was offered one class to teach instead of three "due to the racism and retaliation against [her]." Mot. to Am., Ex.

6

A. Plaintiff also alleges that she spoke at length about race during her scheduled interview with the EEOC. Mot. to Am. at 1-3. Plaintiff argues that this additional information demonstrates that she exhausted her administrative remedies with respect to her Title VII race discrimination claims. *Id.* at 1-4.

In dismissing her Title VII race discrimination claims, the Opinion did note that Plaintiff had been unable to point to pre-charge correspondence with the EEOC referencing her racial discrimination and harassment claims. Opinion at 8. Plaintiff's EEOC intake form fills this evidentiary gap. But these additional allegations do not overcome the Court's determination that Plaintiff failed to exhaust her administrative remedies.

"Any claims not included in the final EEOC Charge itself could not be exhausted at the administrative level." *Fleming v. Verizon New York, Inc.*, 419 F. Supp. 2d 455, 463 (S.D.N.Y. 2005). As the Opinion held, and as Plaintiff herself concedes, her EEOC charge made no mention of race or race discrimination. This new evidence does little to change the fact that the charge, as signed by Plaintiff, "'would not lead an investigation into possible race discrimination and racial harassment [and] Plaintiff has failed to exhaust [her] administrative remedies with respect to these claims.'" Opinion at 8 (quoting *Little v. NBC*, 210 F. Supp. 2d 330, 375 (S.D.N.Y. 2002)). Accordingly, amendment to permit Plaintiff to plead facts regarding the substance of her intake questionnaire and interview would not suffice to revive Plaintiff's Title VII race discrimination claims and thus would be futile.

7

Plaintiff argues that the EEOC staff should be blamed for the omission, claiming that they "intentionally omitted the very idea of race altogether from [her] charge." Mot. to Am. at 1.  Even assuming this is true, Plaintiff would not be excused from compliance with the statutory exhaustion requirement.  The Seventh Circuit rejected this exact argument by a litigant who failed to include a failure to accommodate claim in his EEOC charge:

> Attempting to avoid the limitations of the charge, Novitsky blames the EEOC.  Her intake questionnaire mentions the Yom Kippur episode.  The charge itself, drafted by an EEOC staffer who read the questionnaire, does not.  Under the statute, however, it is the charge rather than the questionnaire that matters.  42 U.S.C. § 2000e–5(b). . . .  Only the charge is sent to the employer, and therefore only the charge can affect the process of conciliation.  What is more, the charge is not the work of a faceless bureaucrat, leaving victims of discrimination helpless to protect themselves.  Complainants are free to draft and file charges on their own, or hire attorneys to do so, and a charge drafted by the EEOC's staff is not filed unless the complainant signs it—as Novitsky did.  If she had been dissatisfied with the staff's understanding of her answers, all she had to do was point this out and ask for an addition.

*Novitsky v. Am. Consulting Eng'rs, L.L.C.*, 196 F.3d 699, 702 (7th Cir. 1999); *see also Sussle v. Sirina Prot. Sys. Corp.*, 269 F. Supp. 2d 285, 315 (S.D.N.Y. 2003) ("[C]ourts will not consider claims presented in such a questionnaire in determining the scope of an EEOC charge where the plaintiff signed and submitted an actual charge.").

Judge Carter did not hold to the contrary.  In referencing Plaintiff's failure to produce pre-charge EEOC correspondence, he explicitly stated that he was

8

"assuming, *arguendo*, that such email correspondences could be consolidated into Plaintiff's EEOC charge." Opinion at 8. That is, he was assuming it to be true for the sake of argument. Judge Carter never held that statements made to the EEOC that were not included in the charging document would satisfy the exhaustion requirement. Accordingly, these additional allegations regarding Plaintiff's contact with the EEOC provide no basis to grant leave to amend the complaint.

### B. Allegations Regarding Disparate Treatment

Plaintiff additionally seeks to amend her complaint to include allegations regarding comparator employees that were treated more favorably than Plaintiff. Mot. to Am. at 14-16. Specifically, Plaintiff alleges that several white professors from the Musical Theater department had been the subject of comparable student complaints but did not receive the same poor performance evaluations and removal from teaching a class. *Id.*

A plaintiff may raise an inference of race discrimination by showing that an employer "treated [her] less favorably than a similarly situated employee outside [her] protected group." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). To be a proper comparator, employees must be "'similarly situated in all material respects' to the individuals with whom she seeks to compare herself." *Id.* This test requires a plaintiff to "show that her co-employees were subject to the same performance evaluation and discipline standards." *Id.* at 40. "Courts have held that where employees are disciplined by different supervisors, they are not similarly situated." *Brown v. Waterbury Bd. of Educ.*, 247 F. Supp. 3d 196, 209 (D. Conn.

9

2017); *see also Conway v. Microsoft Corp.*, 414 F. Supp. 2d 450, 465 (S.D.N.Y. 2006) ("In the Second Circuit, whether or not co-employees report to the same supervisor is an important factor in determining whether two employees are subject to the same workplace standards for purposes of finding them similarly situated.").

Plaintiff's allegations regarding the treatment of professors in an entirely different department at the university, who did not share the same supervisors as Plaintiff, do not give rise to a reasonable inference that Defendants Hsu and Blackwood were animated by racial animus when they took the challenged actions with respect to Plaintiff. As these allegations would not suffice to make out a prima facie case of race discrimination, the Court denies leave to amend as futile.

The Court also denies leave to amend on the grounds of undue delay and prejudice. Judge Carter dismissed Plaintiff's race discrimination claims in March 2024. Plaintiff waited more than a year to file her motion to amend the complaint to address the issues raised in the Opinion and has offered no explanation for the delay. Allowing Plaintiff to file a third amended complaint to add new claims at this late date would prejudice Defendants. Substantial progress has already been made with respect to discovery, with the bulk of document discovery to be completed within the next month, and fact discovery scheduled to close in August. The addition of race discrimination claims would substantially expand the scope of discovery and would likely require a substantial extension of the discovery deadline. In light of this history, coupled with the fact that Plaintiff had previously been afforded the opportunity to amend her complaint to address the issues raised in

Defendants' pre-motion letter, the Court finds that permitting amendment to include a new class of claims at this stage in the litigation would be unduly prejudicial.

### C. Reconsideration of Judge Carter's Opinion

A review of the remaining portions of Plaintiff's purported motion to amend reveals that Plaintiff, for the most part, does not seek to amplify her allegations to cure the issues identified by the Court in its Opinion dismissing her discrimination and defamation claims. Rather, Plaintiff's submission largely reiterates the same allegations that the Court has already found legally deficient, and rehashes arguments that the Court previously rejected. For example, although Plaintiff seeks the reinstatement of her defamation *per se* claim, she has not pointed to any new allegations that would be included in a third amended complaint that would establish defamation. Rather, she explicitly contests Judge Carter's determination that the statements previously set forth in the Second Amended Complaint were either subject to privilege or not defamatory. Mot. to Am. 13. Similarly, Plaintiff requests leave to restore Marvin Krislov as a defendant, but does not suggest there are any new factual allegations that would be included in an amended pleading that would establish his personal involvement in acts of retaliation.

Accordingly, although not framed as such, Plaintiff's motion in essence seeks reconsideration of Judge Carter's decision. Local Rule 6.3 governs such motions and requires that a motion for reconsideration be filed within fourteen days after the entry of a court's determination of the original motion. S.D.N.Y. Local Civ. R. 6.3.

Plaintiff's motion for reconsideration fails procedurally because it was not filed within fourteen days of Judge Carter's March 29, 2024 Opinion. *Bennett v. Care Correction Sol. Med. Contracted*, No. 15 CIV. 3746 (JCM), 2017 WL 4250519, at *2 (S.D.N.Y. Sept. 25, 2017) (denying a pro se plaintiff's motion for reconsideration for failing to file within fourteen days of the entry of judgment); *R.B. ex rel. A.B. v. Dep't. Educ. of City of New York*, No. 10 Civ. 6684 (RJS), 2012 WL 2588888, at *2 (S.D.N.Y. July 2. 2012) (finding that a plaintiff's *pro se* status does not insulate them from complying with procedural rules for a motion for reconsideration). Plaintiff waited until February 6, 2025, to file her motion. On this basis alone, the Court declines to revisit Judge Carter's decision granting in part the motion to dismiss.

The Court would not grant Plaintiff's motion for reconsideration even had it been made in a timely fashion because she fails to identify any legal or factual errors in Judge Carter's decision. A motion for reconsideration will be denied unless the court overlooked matters, such as controlling decisions or data, that might be expected to alter the conclusion reached by the court. *Davidson v. Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001). "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citation omitted); *see also Lanesborough 2000, LLC v. Nextres, LLC*, No. 23 CIV. 7584 (PKC), 2025 WL 785071, at *1. The grounds for reconsideration are to be

12

"narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *Dellefave v. Access Temporaries, Inc.*, No. 99 CIV. 6098 (RWS), 2001 WL 286771, at *1 (S.D.N.Y. Mar. 22, 2001).

In her challenge to Judge Carter's decision, Plaintiff cites no intervening change in controlling law, points to no new evidence, and makes no case that reconsideration is needed to correct a clear error. For example, in the Second Amended Complaint, Plaintiff articulates that her defamation per se claim is based on the "knowingly false and defamatory claims by, inter alia, removing me from my course mid-semester, removing my official professor title on Pace's public online system while I was actively teaching, and filing a false and negative end of year evaluation." ECF No. 57 ¶ 414. The Motion to Amend differs very little, arguing that "Defendant's remarks . . . could not be protected if the statements were made to falsely suggest an unfitness, incapacity, or inability to perform my duties as [a] professor." Mot. to Am. at 13. Plaintiff simply disagrees with the Court's conclusion that the allegedly false statements are subject to the qualified privilege. Such disagreement does not provide grounds to reconsider the Court's prior decision.

### D. Sanctions

Plaintiff also asks that sanctions be levied against Defendants and Krislov for "their conduct in this lawsuit." Mot. to Am. at 38. The record does not establish

13

any sanctionable conduct by Defendants or their counsel. Accordingly, the request that the Court impose sanctions is denied.

## CONCLUSION

Accordingly, Plaintiff's request for leave to amend the complaint and for sanctions is DENIED.

SO ORDERED.

Dated: May 1, 2025  
      New York, New York

_____  
JEANNETTE A. VARGAS  
United States District Judge